UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 14-cv-21192-JEM

**JORGE A. AGRELO and
OLGA M. FERNANDEZ**, individuals;

Plaintiffs,
vs.

**THE MELONI LAW FIRM,** et al.,

Defendants.

_____/

**PLAINTIFFS' AMENDED
<u>MOTION FOR LEAVE TO SEEK PUNITIVE DAMAGES</u>[1]**

Plaintiffs JORGE A. AGRELO and OLGA M. FERNANDEZ ("Plaintiffs") through and

by undersigned counsel hereby move, ***at the close of discovery***, pursuant to Fla. Stat. § 768.72,

Fla. Stat. § 559.55 *et seq*. and Fed. R. Civ. P. 15(a)(2) for leave to amend to add a claim for

punitive damages against Defendants The Meloni Law Firm (MELONI), Affinity Management

Services, LLC (AFFINITY) and Marbella Park Homeowner's Association, Inc. (MARBELLA).

If leave is granted, Plaintiffs would simply request limited discovery of Defendants' current

financial condition.

> Punitive damages are a form of extraordinary relief for acts and omissions so
> egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the
> <u>public as a whole</u>…
>
> *BDO Seidman, LLP v. Banco Espirito*, 38 So. 3d 874, 876 (Fla. 3rd DCA 2010).

Discovery has now concluded with the last of the Defendants' corporate representatives

deposed on November 7, 2014 and Defendant deposition transcripts completed on December 3,

---

1    Amended to comply with the line spacing requirements set forth in ECF-34. *See*, EFC-97.

2014.[2]  Plaintiffs proffer that the evidence adduced in discovery and which will be introduced at trial shows that the Defendants, MARBELLA, AFFINITY and MELONI through their agents and employees have relentlessly and systematically engaged in willful, grossly negligent and abusive tactics to attempt to collect alleged debts from Plaintiffs. Each of the Defendants is guilty of intentional misconduct and/or gross negligence.[3] The Defendants' acts and omissions are not isolated events or even selective incidents directed only at the Plaintiffs. The Defendants' acts and omissions ***affected and affect*** an unknown number of other homeowners involving attempted collection of (i) overcharged, non-incurred and selectively imposed late fees; (ii) unlawful, unauthorized and overcharged fines; (iii) Association assessments already paid; (iv) improper interest calculated from before the due dates of the claimed amounts owed; (v) unauthorized interest imposed on fines; and (vi) unreasonable contingent attorney's fees and other unlawful charges, hereinafter "Fraudulent Charges."

In pursuit of these Fraudulent Charges, MARBELLA, AFFINITY and MELONI filed an unknown number of fraudulent "Liens," "Claims of Lien," "Claims of Lien for Homeowners Assessments" or other such titles, and sent notices of default and dunning letters to Plaintiffs and other homeowners where the amounts sought by the Defendants were simply not owed. MARBELLA, AFFINITY and MELONI have an illegal routine practice and policy for filing, claiming, or asserting liens, encumbrances, sending dunning letters or other notices to Plaintiffs

---

2    Defendant deposition transcripts are being filed separately. Record evidence or proffer of likely evidence is attached as Exhibit "A" hereto. A deposition of Marbella's corporate representative taken in another case is attached as exhibit "B" and the Plaintiffs request the Court take judicial notice of that sworn testimony pursuant to Federal Rules of Evidence.

3    The Defendants' have engaged in outright deceit, violations of notary laws, violations of Florida Bar rules and operating under illegal debt collection contracts.   Several of these issues have been reported to the appropriate state agencies for investigation, however, justice and the public good would best be served by allowing a jury to assess punitive damages against each Defendant.

and other homeowners, that were false and fraudulent.   Accordingly, the claims of lien filed by Defendant MELONI were fraudulent and encumbered subject properties for more money than the unit owners legally owed.   MARBELLA, AFFINITY and MELONI willfully, or with gross negligence, attempted to charge, or permitted to be charged and attempted to collect, certain attorney's fees when they knew there was no right under Florida law, or provision in the Association's governing documents *or lawful retainer agreement* which would permit MELONI to unilaterally assess and collect their alleged fees from the Plaintiffs and other homeowners.[4] Plaintiffs will show that Defendants MARBELLA, AFFINITY and MELONI knowingly, and acting jointly, made material misrepresentations of charges, penalties and claims for payments for alleged debts owed to the Association by Plaintiffs and other homeowners in the community by concealment. Defendants clearly intended for Plaintiffs and other homeowners to act upon the misrepresentations causing damages to Plaintiffs and other homeowners through the illegal collection of money, and restriction of Plaintiffs' property rights.

Plaintiffs made multiple attempts to resolve these issues pre-litigation. They and their attorneys actively disputed the alleged debts being sought and provided both documentation and legal and governing document citations for almost two years without any substantive response. Finally, Plaintiffs submitted a *statutory* pre-suit mediation demand on February 19, 2013.   This demand was ignored by the Defendants and evidently concealed by MELONI – who said in deposition that a response was not required.   Despite multiple dispute letters and complaints submitted in writing by Plaintiffs and others homeowners to MARBELLA, AFFINITY, MELONI and regulatory and government entities, MARBELLA continues to this day to send to

---

4      MELONI has withdrawn their "good faith error" defense however, all of the Defendants pointed to the others as the ones they were relying on to verify the debts sought from Plaintiffs and others.

Plaintiffs and other homeowners false collections demands, notices, statement of accounts, claims and other communications wherein Defendants falsely represent that the Plaintiffs and other homeowners owe to MARBELLA alleged debts that includes the "Fraudulent Charges". Plaintiffs will prove that each Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiffs and other homeowners. Defendants' victims are unfortunate persons facing the loss of their homes. Such financial hardships often cause or arise in conjunction with employment, health, or marital problems, which render such debtors particularly vulnerable to these deceptive schemes. A lawyer's knowing misrepresentation of the amount of indebtedness to cheat consumers is an inexcusable practice exponentially aggravated when it comes in the form of fraudulent liens and illegitimate residential foreclosure proceedings.

## I.     MEMORANDUM OF LAW

### A.  Rule 8 Standard

Fed. R. Civ. P. 8(a)(2) requires only that a claim for relief include a short and plain statement showing that the pleader is entitled to relief. The Plaintiffs' claim for damages in the Amended Complaint at page 27 states the following in pertinent part:

> Plaintiffs claim any further legal and equitable relief that this Court may deem just and equitable and reserve the right to amend this pleading at the time of, or prior to trial as necessary in the interest of justice.

Most courts interpret Rule 8 as not requiring a plaintiff to explicitly state the phrase "punitive damages" in his complaint, so long as it otherwise alleges sufficient facts in support of such a claim. In jurisdictions governed by the Fed. R. Civ. P., or equivalent state court rules, a "notice pleading" standard is utilized and general factual allegations will generally suffice. *See, e.g., Guillen v. Kuykendall,* 470 F.2d 745, 748 (5th Cir. 1972). Allegations that a defendant acted "willfully or with reckless disregard for the plaintiff's interests" should be enough to give the

defendant sufficient notice. *See Newell v. Wisconsin Teamsters Joint Council No. 39*, No. 05-C-552, 2007 WL 2874938, at *2 (E.D. Wis. Sept. 28, 2007)("the prayer for relief does not determine what relief ultimately will be awarded" citing Wright & Miller, Federal Practice and Procedure, § 2664, Demand for Judgment - *Judgment in Nondefault Cases*) *see also* 10-54 Moore's Federal Practice, Civil § 54.27(1)(a) (citing cases) ("(E)very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Finally, punitive damages can be awarded by the trial court "in its discretion" so that such a request for relief need not be express in the complaint, *see Townsend v. Asset Acceptance Corp*., No. 03-1921CI-88A (Fla. 6th Cir. Ct. August 6, 2004).

**B. Legal Standard Applicable to Motions for Leave to Amend Filed After the Scheduling Order Deadline.**

Court scheduling order (DE 34) established August 21, 2014, as the deadline to amend pleadings, when the deadline for amending pleadings set in the scheduling order has passed, as is the case here, Fed. R. Civ. P. 16(b)(4) is implicated. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." In addition to satisfying Rule 15(a), courts have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a) when deciding a motion to amend a complaint filed after the scheduling order deadline. To establish good cause under Rule 16(b)(4), the moving party must show that the amendment deadline could not have been met even if it had acted with due diligence.

**C. Good Cause under Rule 16(b)(4)**

Plaintiffs possessed the documents necessary to reveal Defendants' abusive collection practices and violations of the FDCPA and FCCPA, but it was not until Plaintiffs deposed Defendants in October 28, 2014 and November 7, 2014, after the deadline for amending had expired, that they discovered conclusive facts indicating that Defendants' actions against

Plaintiffs and an unknown number of other homeowners was not just negligent but was also willful, wanton, fraudulent and egregiously malicious. It is clear that ***Plaintiffs could not have reasonably met the scheduled deadlines despite due diligence***. A cursory review of the deposition testimony referenced by Plaintiffs in the Proffer of Evidence further supports their assertion that the depositions revealed new information that would support the claim for punitive damages in accordance with the requirements of the Fla. Stat. § 768.72.

### D. Rule 15 Standard

Fed. R. Civ. P. 15(a) states in relevant part: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . ." Otherwise … only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Eleventh Circuit has held that motions for leave to amend should be liberally granted when necessary in the interests of justice. See, *Jennings v. BIC Corp.,* 181 F.3d 1250, 1258 (11th Cir. 1999). Most courts have interpreted this language to require them to allow an amendment unless one of the following justifies denial: (1) undue delay; (2) bad faith or dilatory motive by the moving party; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility, *see Marcus v. Carrasquillo*, 782 F.Supp. 593 (M.D.Fla.1992). Under Fed. R. Civ. P. 15(a)); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) ("Unless substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.") (citing *Shipner v. Eastern Airlines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).   On the other hand, Federal Rule of Civil Procedure 15(a)(2) does not prescribe a deadline for requesting permission from the court to amend the pleading.

### E.  Undue delay standard

The discovery cut-off was on November 26, 2014, and the Defendant deposition transcripts was completed on December 3, 2014, therefore in any way the Plaintiffs' motion seeking to add punitive damages filed on December 18, 2014 would represent an undue delay *See, e.g., Adams*, 739 F.2d at 869 ("Since amendment of a complaint is not unusual at the summary judgment stage of the case, we would not characterize plaintiffs' failure to amend their complaint earlier as 'undue delay.'").   Ordinarily, delay alone, does not justify denial of leave to amend. *Sec. Ins. Co. v. Kevin Tucker & Assocs., Inc.,* 64 F.3d 1001, 1009 (6th Cir.1995); *see also Tefft v. Seward,* 689 F.2d 637, 639 n. 2 (6th Cir.1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."). Plaintiffs have moved with all due diligence to file this motion. While there may have been *reasonable* delay in Plaintiffs' request to formally add punitive damages claims against Defendants, this delay has not been undue and it was occasioned solely by the Defendants' resistance to comply timely with their discovery obligations. The simplest review of the docket reveals that assertion (ECF 55, 66, 70).   Further, a perfunctory review of some of Defendants' responses to Plaintiffs' written discovery requests would also reaffirm this allegation:

> General Objection…..Defendant, Affinity Management Services, LLC, generally objects to this discovery request. As Plaintiff's well know, Affinity has filed a Motion to Dismiss the Plaintiff's Complaint for lack of subject matter jurisdiction. As of this date, the Court has not ruled on the Motion**. *Defendant should not be obligated to respond to a discovery in a law suit which it believes it should not be involved..(emphasis added)*

> 2….Plaintiff, as a resident of the Association, is entitled to review the Associations' records in the manner described in the Associations declarations and bylaws. As such, the records requested are equally available to Plaintiff as Defendant. *Plaintiff is directed to those procedures to obtain records responsive to this request. (emphasis added)*

6….Defendant has objected to this Court having jurisdiction over the alleged violation by Affinity of a Florida state statute. A Motion to Dismiss has been filed and is still pending. At this point, ***Defendant has not raised any of its procedures nor will the discovery of its procedures be relevant or lead to the discovery of any admissible evidence***. *(emphasis added)*

Response to Request to Produce sent by AFFINITY on October 3, 2014.

### F.  Undue prejudice standard

Defendants have the burden to show undue prejudice within the meaning of Rule 15. For purposes of Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant." While any amendment invariably causes some "practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendants." Courts have found that undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." In this case, the proposed amendment does not propose a new suit, nor rely on a different set of facts, nor add new defendants, nor add new claims other than the Plaintiffs' claim for punitive damages that rely on those identical facts comprising the amended complaint." *See, Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000),   In *Domke v. McNeil-P.P.P., Inc.* 939 F.Supp. 849 (1996) the Court stated:

> Even in the event that this Court denied Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages, Plaintiff would still have the opportunity to make this same motion during the trial proceedings. While Defendant obviously opposes Plaintiff's Motion for Leave to Amend, this Court fails to see how Defendant is prejudiced by Plaintiff's motion.

No prejudice would be created if the Court were to grant Plaintiffs' motion to amend to seek punitive damages. Defendants have been on notice throughout the course of the litigation that Plaintiffs are alleging various flagrant violations and acts by Defendants that may support a

claim for punitive damages. While prayer for relief clauses of the Plaintiffs' amended complaint do not specifically seek punitive damages against Defendants, the counts expressly incorporate facts asserted earlier in the complaint that provide the basis for Defendant's alleged "outrageous" and "recklessly indifferent" conduct. (ECF 24 ¶¶ 40, 41, 49, 50, 51, 58, 63, 77 and 89). Additionally, Defendants' have been on notice since this lawsuit was filed that punitive damages were on the table:

- The Joint Scheduling Report filed on 06/06/14 (DE 31) at p. 7 anticipated possible punitive damages claims if the evidence warranted them.

- A letter dated 05/01/14 from the MELONI'S attorney, Mr. Dale T. Golden, states in the 1st paragraph *"You also indicated that "(t)here may be a punitive damage component" to your client's case"* demonstrating that the Defendants were on notice of the potential claim for punitive damages, See, proffer at page **101**.

- The Plaintiffs' written discovery sent to all Defendants on July 23, 2014 incorporated multiple requests seeking information related to the discovery of admissible evidence in support of the claim of punitive damages. Many of those requests were simply met with improper relevance objections.

- The Responses in Opposition to various Defendant motions filed by Plaintiffs (ECF 64) and (ECF 67) both advised that the Plaintiffs intend to seek punitive damages.

- In Defendants' depositions, punitive damages were discussed, specifically while taking the deposition testimony of Ernesto Delmar from MARBELLA on November 7, 2014, a final judgment resolution awarding punitive damages from a similar case as Plaintiffs was delivered to AFFINITY's Counsel, *See*, MARBELLA's depo Page 13 Lines 19 - Page 14 Lines 8.

Plaintiffs have not "hidden the ball" by asserting new facts in moving to add a punitive damages claim. The facts set in the amended complaint are sufficient. Similarly, Plaintiffs do not seek to add a new cause of action with elements or legal theory that requires the marshaling of additional facts. As a result, any prejudice would, at most, be minimal, and new discovery likely is minimal, or unnecessary, given the existing factual allegations in the amended complaint. *See Dole Fresh Fruit Co. v. Delaware Cold Storage*, Inc., 961 F. Supp. 676, 685-86 (D. Del. 1997)(granting plaintiff's motion to add a restitution claim because the new claim raises no new factual issues, and it is unlikely that defendant "would have conducted its case any differently had it been aware of the claim for restitution"); *Thomas v. Medesco, Inc.*, 67 F.R.D. 129, 131 (E.D. Pa. 1974) (permitting amendment to include punitive damages claim where the amended complaint arises out of the same conduct and asserts no new facts). Case law and the statutory regime here clearly allow and expect a jury to make the determination regarding the applicability and reasonable amount of punitive damages to assess for the Defendants' egregious conduct.

### G.   Futility standard

"Futility" means that amendment would fail to state a claim upon which relief could be granted. *See Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004).   Thus, in assessing "futility," the district court applies the same standard of legal sufficiency that applies under Fed. R. Civ. P. 12(b)(6). *Id.* At 153-54. Rule 12(b)(6) allows courts to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." *Port Auth. v. Arcadian Corp.,* 189 F.3d 305, 312 (3d Cir. 1999). Here, the Plaintiffs have plead the requisite facts in the operative complaint, merely seek to add a punitive damages request to the relief and will not need additional discovery beyond that necessary to determine

the appropriate amount of damages to be awarded should a jury decide that punitive damages should be assessed against the Defendants. S*ee Corporate Fin., Inc. v. Principal Life Ins. Co.*, No. 05-20595-CIV, 2006 WL 3365606, at *1 (S.D. Fla. Nov. 20, 2006)("The undersigned is not persuaded by Principal Life's (futility) arguments because the sufficiency of Plaintiffs' punitive damages claims can only be determined after full presentation of the evidence and because Plaintiffs have made it clear that they require no additional discovery).

### G.  Standard for seeking Punitive damages

The FCCPA states that a "court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. § 559.77(2). The Plaintiffs' claim for punitive damages is based on the FCCPA violations included in the operative complaint (ECF 30), specifically the counts X, XI, XII, XIII, XIV, XV, XVI and XIX. Additionally, Fla. Stat. § 768.72 is substantive and must be applied by Federal Courts. *Mahon v. City of Largo, Florida*, 829 F.Supp. 377 (M.D.Fla.1993); *Marcus v. Carrasquillo*, 782 F.Supp. 593 (M.D.Fla.1992); *Lancer Arabians, Inc. v. Beech Aircraft Corp.*, 723 F.Supp. 1444 (M.D.Fla.1989); *Lewis v. Snap–On Tools Corp.*, 708 F.Supp. 1260 (M.D.Fla.1989).

Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not only the particular plaintiff in the lawsuit, ***but the public as whole***, such that a punishment –not merely compensation- must be imposed to prevent similar conduct in the future. Under Florida Law, the purpose of punitive damages is not further compensating the plaintiffs, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future. See *W.R. Grace & Co.-Conn v. Waters*, 638 So.2d 502, 504 (Fla. 1994); see also *White Constr. Co. v. Dupont*, 455 So.2d 1026, 1028 (Fla. 1984); *see Winn &*

*Lovett Grocery Co. v. Archer*, 126 *504 Fla. 308, 327, 171 So. 214, 221 (1936). As Justice Ervin stated for the Court in *Campbell v. Government Employees Insurance Co.*, 306 So.2d 525, 531 (Fla. 1975):

> In nearly all states punitive damages are recognized to be recoverable. They are no longer looked upon as monstrous but are awarded to vindicate wrongs arising from antisocial behavior. The incentive to bring actions for punitive damages is favored because it has been determined to be the most satisfactory way to correct evil-doing in areas not covered by the criminal law.

Hence, punitive damages are appropriate when a defendant engages in conduct ***which is fraudulent, malicious***, deliberately violent or oppressive, or ***committed which such gross negligence as to indicate a wanton disregard for the rights and safety of others***. Most courts impose punitive damages to serve the goals of punishment and deterrence. The deterrent effect of punitive damages may be necessary to discourage the repeated fraud or wanton lack of care apparently practiced by Defendants. *See Kelsey v. Motorola,* Inc. (1978), 74 Ill.2d 172, 186-87, 384 N.E.2d 353

### H.  Fla. Stat. § 768.72 Standard

Plaintiffs seek to amend to seek punitive damages pursuant to section Fla. Stat. § 768.72. Section 768.72(1), Florida Statutes states that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or ***proffered by the claimant*** which would provide a reasonable basis for recovery of such damages." A plaintiff must obtain leave of court to amend the complaint before they may assert punitive damages. *Simeon, Inc. v. Cox*, 671 So.2d 158 (Fla.1996). A demand for punitive damages is premature without a showing of an evidentiary basis in the record, so Discovery is obviously necessary to create that record. Punitive damages are appropriate when a defendant's conduct is fraudulent, deliberately violent or oppressive, malicious, or committed with such gross negligence as to indicate a wanton disregard for the rights of others. *W.R. Grace & Co. v. Waters*, 638 So.2d 502 (Fla.1994) (*citing*

*White Contr. Co. v. Dupont*, 455 So.2d 1026, 1028–29 (Fla.1984); *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 327, 171 So. 214, 221 (1936) ). The requisite evil intent may be inferred from the Defendant's having pursued a course of action in wanton disregard of the consequences. *Johns–Manville Sales Corp. v. Janssens*, 463 So.2d 242, 247 (Fla. 1st DCA 1984). Additionally, punitive damages may be imposed when the defendant knows of the defect but chooses not to remedy the dangerous condition. *Toyota Motor Co., Ltd. v. Moll*, 438 So.2d 192 (Fla. 4th DCA 1981).

In order to seek punitive damages, Plaintiffs need only provide the Court with a showing of a "reasonable basis" for the recovery of such damages. *See Strasser v. Yalamanchi*, 677 So. 2d 22, 23 (Fla. 4th DCA 1996). "(A)n evidentiary hearing where witnesses testify and evidence is offered and scrutinized under the pertinent evidentiary rules, as in a trial, is neither contemplated nor mandated by the statute in order to determine whether a reasonable basis has been established to plead punitive damages." *Estate of Despain v. Avante Group, Inc*., 900 So. 2d 637, 642 (Fla. 5th DCA 2005). Plaintiff may establish the reasonable basis for punitive damages by proffer, which "is merely a representation of what evidence the (party) proposes to present and is not actual evidence." *Id.* (quoting *Grim v. State*, 841 So. 2d 455, 462 (Fla. 2003)). "(T)he standard that applies to determine whether a reasonable basis has been shown to plead a claim for punitive damages should be similar to the standard that is applied to determine whether a complaint states a cause of action." *Id. at 644*. The proffer, therefore, is reviewed in the light most favorable to the Plaintiff and accepted as true. *Id*. (citing *Sobi v. Fairfield Resorts, Inc*., 846 So. 2d 1204 (Fla. 5th DCA 2003)). Further, pursuant to section 768.72(2), Defendants MARBELLA, AFFINITY and MELONI would be liable for punitive damages based upon clear and convincing evidence of intentional misconduct or gross negligence. "Intentional

misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(2)(a). "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b).

Additionally, under Florida Law, passing on the legal sufficiency of the evidence to warrant submitting the issue of punitive damages to the jury requires only proof of legal malice not necessarily actual malice.   It is not necessary to prove actual malice or intent to cause the particular injury sustained; the requisite malice or evil intent may be inferred from the defendant's having willfully pursued a course of action in wanton disregard of the potential harm likely to result as a consequence of that wrongful conduct. *Adams v. Whitfield*, 290 So.2d 49 (Fla. 1974)(Legal malice does not require proof of the defendant's ill will, hatred or spite, instead it is implied from the defendant's conduct.); *Griffith v. Shamrock Village*, Inc., 94 So.2d 854 (Fla. 1957); *Kirksey v. Jernigan*, 45 So.2d 188 (Fla. 1950). In Florida, a showing of legal malice is all that is required in order to recover punitive damages. *See, Montgomery Ward & Co., Inc. v. Hoey*, 486 So. 2d 1368 (Fla. 5th DCA 1986); *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242 (Fla. 1st DCA 1984); *Wrains v. Rose*, 175 So. 2d 75 (Fla. 2d DCA 1965). Defendants MARBELLA, AFFINITY and MELONI would be liable for punitive damages based on acts of legal malice, intentional misconduct and/or gross negligence.

## II.      SUMMARY OF THE PROFFER

1.      The Defendants each have actual and constructive knowledge of MARBELLA's governing documents and the applicable Florida Statutes that they are breaching for years.

Proffer at Pages **2-12**.

2.      MARBELLA's Board of directors has breached the governing documents in the past, subjecting the association to the bankruptcy and the entire community to outrageous legal fees and costs. Proffer at Pages **3-5**.

3.      The Defendants either lied about the existence of a collection policy for MARBELLA or are actively trying to conceal the collection policy. Proffer at Pages **12-16**.

4.      Plaintiffs will prove at trial that MARBELLA and AFFINITY indiscriminately harmed the Plaintiffs and others by fabricating violations, sending improper and baseless notices of violation and maintaining unauthorized, unjust and unreasonable fines, penalties and costs. Proffer at Page **21**

5.      All of the Defendants were warned on numerous occasions ***over two years*** by Plaintiffs and Plaintiffs' counsel that the $1,000 fine imposed against them was improper since: a) the grievance committee was improperly formed and no appointed by the Board; b) Plaintiffs were defectively notified of the fine hearing; c) the amount of the fine was not authorized by MARBELLA's governing documents; and d) the violation was egregiously fabricated as the Plaintiffs had written Board permission to build a pool on their property – the alleged basis for the fine.   The Defendants either consciously ignored Plaintiffs warnings or actively sought to fabricate a story to explain or cure their improper actions. Proffer at Pages **21-41**.

6.      Defendant MARBELLA's corporate representative lied under oath at deposition about whether the Plaintiff had Board permission to construct a pool on their property. The Proffer at Page **20**.

7.      Defendant MARBELLA's corporate representative lied under oath at deposition about who was on the grievance committee that alleged fined the Plaintiffs; lied about whether a

Board member was unlawfully on the Committee; lied about when the Board member was appointed to the grievance committee; and lied about when and how the Board member resigned from the Board and was appointed to the grievance committee by the Board. Proffer at Pages **25-41**.

8.      Plaintiffs believe the evidence shows that AFFINITY altered manually the Plaintiffs' Statement of Account removing the association payment made by Plaintiffs on September 5, 2013. Proffer at Pages **82-84**.

9.      Plaintiffs believe the evidence will show that AFFINITY added manually a late fee on the Plaintiffs' Statement of Account for September when the payment was posted within the 10 days of grace period and a late fee was no proper, nor authorized. Proffer at Pages **82-84.**

10.     Defendant AFFINITY, evidently aware of the issue of the illegal grievance committee and illegal fine against the Plaintiffs, simply refused to produce official copies of MARBELLA's records, which would have conclusively demonstrated the issues. Beyond their obligations in discovery in this forum, they are statutorily and contractually obligated to maintain and produce such documents to all association members. AFFINITY stated in discovery responses that "***Defendant objects to this request (production of Board records) as it has nothing to do with the issues in this lawsuit.***" The legitimacy of the "debt" has everything to do with this lawsuit. Proffer at Page **35**.

11.     Plaintiffs will prove at trial that AFFINITY deliberately thwarted six (6) attempts by Plaintiffs to inspect the association's book and records for almost 2 years. The records sought by Plaintiffs are critical to the matters in this litigation. Proffer: AFFINITY's corporate rep depo. at pages **100-109.**

12.     Plaintiffs advised Defendant MELONI about the illegitimacy of the debt they, and

Fein & Meloni sought to collect from the Plaintiffs but MELONI decided to undertake no independent inquiry to determine whether the debt they were attempting to collect was valid. Instead they simply wrote the Plaintiffs a letter denying their objections. Proffer at Pages **62-66**.

13.     Commencing in March 2013, ***and through the filing of this motion***, AFFINITY on behalf of MARBELLA charged Plaintiffs and other homeowners $25.00 late fees for late payments of association dues. Likewise MELONI filed and continues filing Claim of Liens and foreclosure proceedings which include these unlawful fees. Proffer at Pages **41-95**.

14.     MARBELLA, AFFINITY and MELONI are well aware that the amount of late fees the Association can charge at ten percent (10%) of the amount of the assessment or $11.50.[5] MARBELLA knew they were only authorized to collect a late fee of $11.50, but they maliciously authorized to AFFINITY and MELONI to charge a late fee of $25.00 for 2 years.

15.     Plaintiffs will prove at trial that Edoardo Meloni lied about when he started representing MARBELLA and when he ceased operating as Fein and Meloni. Proffer at Page **9**.

16.     Plaintiffs are in possession of some 130 statements of account where AFFINITY on behalf of MARBELLA has posted, and continued posting and collecting illegal late fees in the amount of $25.00 to homeowners' accounts for two years. Defendant MELONI, as collection agent for MARBELLA, and with documents *fabricated* [6] by AFFINITY and MARBELLA, filed fraudulent Claim of Liens and illegitimate foreclosure proceedings against an unknown number

---

5     Some earlier MARBELLA board meetings were videotaped and posted on youtube.com for the benefit of homeowners.   In at least one of those earlier Board meetings, on January 18, 2012, (http://www.youtube.com/watch?v=J9iaI2wR54A) the prior property manager instructed the board about what it could legally charge for late fees.  MARBELLA, AFFINITY and MELONI have either consciously or negligently ignored these clear instructions. MARBELLA's designated corporate representative, RERNESTO DELMAR, whose deposition was taken in this case can be seen at that meeting.

6     At least one of AFFINITY's principals notarized incomplete documents and filled in blanks in the documents afterwards.

of homeowners.   All of these documents are public records.   Specifically, they are Liens and "Affidavits of amounts due" where MELONI falsely claimed overcharged late fees of $25 for 2013 and 2014 in connection with late payments or unpaid Association assessments Proffer at Pages **60, 70**.

17.     Plaintiffs can prove at trial that AFFINITY and MARBELLA were warned in early 2013 about the unlawful late fees, but failed to take any action to correct the practice going forward until January 2015. Proffer in MARBELLA's depo. at pages **42-43**

18.     MARBELLA authorized collection activities against the Plaintiffs and other homeowners and executed dozens of Affidavits of Amounts Due and Owing which included Fraudulent Charges. In deposition DELMAR admitted that he didn't review any records before he signed them**.** Proffer at Pages **53-55**.

19.     Plaintiffs will prove at trial through public records that MELONI charged illegal interest on delinquent balances during foreclosing proceedings. Proffer at Pages **68, 87**.

20.     Defendant MELONI denied that the illegal fine was a debt under the FDCPA and FCCPA in correspondence to the Plaintiffs. Pursuant to the MARBELLA governing documents state that fines become assessments.   MELONI stated in deposition that assessments were debts under the FDCPA and FCCPA.   This circular pattern of denial is MELONI's legal strategy to avoid liability for its unlawful act. Such a strategy evidences a clear intent to deceive. **ECF-78-1; p49; ECF-30-13 & 30-20**.

21.     Plaintiffs sent a statutory pre-suit mediation offer to MARBELLA through their attorney MELONI on February 19, 2013, in an effort to avoid this litigation. MELONI had the legal obligation to discuss with its client the potential lawsuit and the possible consequences in connection with the claims raised by Plaintiffs. MELONI knew they should have discussed this

Plaintiffs' Pre-suit mediation offer with its client MARBELLA, but they did not do it. Proffer at Pages **95-97**.

22.     Plaintiffs will prove at trial that AFFINITY, MARBELLA and MELONI haven't refunded or instituted a plan to refund all ill-gotten monies that have been unjustly received, collected and retained from Plaintiffs and from an unknown number of homeowners in the Association over the last two years.

23.     Plaintiffs will prove at trial that Edoardo Meloni, Esq. in conspiracy with MARBELLA simply used his status as lawyer (sold his name) to assist in carrying out a deceptive scheme for their own commercial benefit.   Proffer at Pages **87-97**.

24.     Defendant MELONI is the successor to the initial attorney debt collector in this case: FEIN & MELONI.   MELONI has repeatedly denied this fact. See Meloni Answer and Affirmative Defenses.   Attorney Fein was disbarred in September 2013 and neither AFFINITY or MARBELLA (or Plaintiffs for that matter) were notified by FEIN or MELONI of this fact. MELONI actually continues to this day to be operating as attorney for MARBELLA under a void FEIN & MELONI retainer agreement. The Plaintiffs have complained that MELONI refused to identify itself as either a registered debt collector in Florida or otherwise exempt from registration in violation for the FDCPA and FCCPA. In reality, under the void retainer agreement, MELONI has no authority to debt-collect for the Association in Florida. Proffer at Pages **9, 97-101**.

### III.     CONCLUSION

The Plaintiffs' proffer of evidence is clear and unassailable. The requirements of section 768.72(2) have been satisfied, as well as all of the following: (a) MARBELLA, AFFINITY and MELONI actively and knowingly participated in the conduct; (b) the Officers, Directors, and

Managers of MARBELLA, AFFINITY and MELONI knowingly condoned, ratified, or consented to such conduct; and (c) MARBELLA, AFFINITY and MELONI engaged in conduct that constituted gross negligence, intentional misconduct and/or legal malice and that contributed to the loss and damages suffered by Plaintiffs and an unknown number of homeowners.

As a result, it's proper to allow the jury to consider imposing punitive damages against MARBELLA, AFFINITY and MELONI, per §768.72(3). This proffer of evidence provides a reasonable basis that all of the Defendants acted a) indifferently and intentionally knowing that the Plaintiffs and other homeowners would be harmed by their actions; and b) with gross negligence because their actions constitute inexcusable disregard for Plaintiffs and other homeowners' rights. This showing is sufficient to satisfy the statutory requirement to plead a claim for punitive damages.

WHEREFORE, Plaintiffs respectfully request the Court grant this motion and allow the jury to consider the awarding punitive damages against these Defendants either as an amendment to the pleadings or under Rule 8, Fed R. Civ. P.

> **REINER & REINER, P.A.**
> *Counsel for Plaintiffs*
> 9100 So. Dadeland Blvd., Suite 901
> Miami, Florida 33156-7815
> Tel: (305) 670-8282; Fax: (305) 670-8989
> dpr@reinerslaw.com; eservice@reinerslaw.com
>
> **/S/ DAVID P. REINER, II**
> By:_____
> **DAVID P. REINER, II**; Fla. Bar No. 416400

## LOCAL RULE CERTIFICATION

Plaintiffs certify that in accordance with Local Rule 7.1, undersigned counsel has conferred with counsel for the Defendants herein on the motion in a good faith effort to resolve the issues raised and is authorized to represent that the Defendants OPPOSE this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>*January 12, 2014*</u>*, I electronically served this on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF, BY EMAIL or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

## SERVICE LIST
### CASE NO.: 14-cv-21192-JEM

*<u>Via CM/ECF-EMAIL</u>*

CRAIG S. HUDSON, ESQ.
Marshall, Dennehey,
Warner, Coleman & Goggin, PC
100 NE Third Avenue, Suite 1100
Ft. Lauderdale, FL 33301

RACHEL K. BEIGE, ESQ.
RYAN A. FOGG, ESQ.
Cole, Scott & Kissane, P.A.
1645 Palm Beach Lakes Blvd, 2nd Floor
West Palm Beach, FL 33401

DAVID P. REINER, II, ESQ.
Reiner & Reiner, P.A.
9100 So. Dadeland Blvd., Suite 901
Miami, FL 33156

DALE T. GOLDEN, ESQ.
BENJAMIN W. RASLAVICH, ESQ.
Golden Scaz Gagain, PLLC
201 North Armenia Avenue
Tampa, Florida 33609