## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**FILED BY** _ABM_
Deputy Clerk

**Dec 8, 2016**

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. **MIA**

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 08, 2016

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  15-14136-BB
Case Style: Jorge Agrelo, et al v. Affinity Management Services,, et al
District Court Docket No: 1:14-cv-21192-JEM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit
_____

No. 15-14136
_____

District Court Docket No.
1:14-cv-21192-JEM

JORGE A. AGRELO,
OLGA M. FERNANDEZ,
individuals,

Plaintiffs - Appellants,

versus

THE MELONI LAW FIRM,
a.k.a. Edoardo Meloni, P.A
AFFINITY MANAGEMENT SERVICES, LLC,
a limited liability corporation,
MARBELLA PARK HOMEOWNERS' ASSOCIATION, INC.,
a Non-Profit corporation,
EDOARDO MELONI,
an individual,

Defendants - Appellees,

ALEXIS MCDONALD,
an individual,

Defendant.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as
the judgment of this Court.

Entered: November 09, 2016
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna Clark

ISSUED AS MANDATE 12/08/2016

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14136

_____

D.C. Docket No. 1:14-cv-21192-JEM

JORGE A. AGRELO,
OLGA M. FERNANDEZ,
individuals,

                                                Plaintiffs - Appellants,

versus

AFFINITY MANAGEMENT SERVICES, LLC,
a limited liability corporation,
MARBELLA PARK HOMEOWNERS' ASSOCIATION, INC.,
a Non-Profit corporation,

                                                Defendants - Appellees.

THE MELONI LAW FIRM,
a.k.a. Edoardo Meloni, P.A,
EDOARDO MELONI,
an individual,

                                                Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 9, 2016)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and SCHLESINGER,[*]
District Judge.

JILL PRYOR, Circuit Judge:

The main issue presented in this appeal is whether a fine imposed by a

homeowners' association ("HOA") for violating the HOA's governing documents

is a debt for purposes of the Florida Consumer Collection Practices Act

("FCCPA"), Fla. Stat. § 559.55 *et seq.*  The district court held that it is not and thus

granted summary judgment to Affinity Management Services, LLC, one of the

agents of Marbella Park Homeowners' Association, Inc. that attempted to collect

an unpaid fine from Marbella members Jorge A. Agrelo and Olga M. Fernandez

(the "homeowners").  The court granted summary judgment to Marbella for the

same reasons and also on the alternative grounds that Marbella was not a debt

collector itself and that it could not be vicariously liable for the FCCPA violations

of its agents.[1]

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

[1] Under Federal Rule of Civil Procedure 54(b), the district court certified for immediate
appellate review its summary judgment in Marbella's and Affinity's favor.  Still pending in the

2

After careful consideration and with the benefit of oral argument, we reverse the district court's grant of summary judgment to Affinity, vacate the grant of summary judgment to Marbella, and remand to the district court for further proceedings.  The district court erred in concluding that the HOA fine at issue is not a debt for FCCPA purposes and granting summary judgment on that basis.  We do not decide whether under Florida law Marbella could be vicariously liable for the FCCPA violations of its agent because the district court failed to apply Florida law in the first instance.  On remand, the district court should reconsider this issue under Florida law.

## I.   BACKGROUND[2]

### A.   Factual Background

Agrelo and Fernandez, a married couple, owned a home together in Miami, Florida.  During the relevant time, they were members of Marbella, an HOA. Affinity was Marbella's property manager.  As members of Marbella, the homeowners were bound by Marbella's governing documents, which included the HOA's Bylaws, Articles of Incorporation (including amendments thereto) and a

---

district court are the homeowners' claims against two additional defendants, the Meloni Law Firm a/k/a Edoardo Meloni, P.A. and Edoardo Meloni, Esq., alleging violations of the FCCPA and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*

[2] We derive the factual background from the evidence in the record, which we view in the light most favorable to Agrelo and Fernandez, as we must on their appeal of the grant of summary judgment in favor of Affinity and Marbella.  *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008).

Declaration of Covenants and Restrictions for Marbella Park (and additions thereto), among other documents (collectively, the "governing documents").  The governing documents required HOA members to pay an annual assessment, due in monthly installments.  These assessments were secured by a continuing lien held by the HOA on each property.

The governing documents also empowered Marbella to fine members for violating its Declaration of Covenants and Restrictions (a part of the governing documents).  The maximum amount of a fine depended on the number of times the member previously had committed a similar offense, limiting the first fine to a payment equivalent to one month of the annual assessment (in this case, $115).  Under the Declaration of Covenants and Restrictions, once a fine was imposed, it was "deemed an individual assessment, and if not paid when due[,] all of the provisions . . . relating to the late payment of assessments" applied.  Declaration of Covenants and Restrictions for Marbella Park at Art. VI, § 9 (Doc. 30-6).[3]  To enforce such obligations, Marbella could sue the member or foreclose upon Marbella's continuing lien on the property.

Marbella notified the homeowners that they had violated the governing documents.  Although Marbella identified no specific provision of the governing documents that the homeowners had violated, Marbella contended that they

---

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

improperly performed unapproved construction, relocated a fence, and removed

plants.  Marbella gave the homeowners three weeks to correct the purported

violation, but they took no action.  After a hearing on the violation before

Marbella's Grievance Committee, which the homeowners attended, the Committee

recommended that Marbella's Board of Directors fine the homeowners $100 for

each day the violation went uncorrected.  Marbella set the total fine at $1,000, the

maximum Florida law allows for a single, continuing violation.  *See* Fla. Stat. §

720.305(2).  The homeowners refused to pay the fine, maintaining, among other

points, that they had not violated any Marbella rule and had not been afforded due

process.

Over the next several months, Affinity and attorneys for Marbella—the

Meloni Law Firm a/k/a Edoardo Meloni, P.A. and Edoardo Meloni, Esq. (together,

"Meloni")—sent the homeowners at least five letters on Marbella's behalf about

the dispute.  On May 16, 2013 and then again on June 28, 2013, Affinity sent the

homeowners nearly identical letters demanding $1,000, which Affinity

characterized as a "delinquent assessment[]."  May 16, 2013 Letter (Doc. 30-11);

June 28, 2013 Letter (Doc. 30-12).  Affinity warned the homeowners of the

consequences if they failed to pay, threatening to file and foreclose upon a lien

against their home,[4] to seek a personal judgment to seize their property and garnish

their wages, and to file a legal action to collect "delinquent assessments, late fees,

interest, attorney's fees and other costs of collection."   May 16, 2013 Letter; June

28, 2013 Letter.

After Marbella received no payment, it had Meloni send another payment

demand letter to the homeowners on August 9, 2013.  Meloni notified the

homeowners that they owed Marbella a total of $1,115 for "past due maintenance

assessments."  August 9, 2013 Letter at 1 (Doc. 30-13).  The amount was

comprised of $1,000 for the fine imposed by the Marbella Board and an additional

$115 for the monthly fee for August.  Meloni also demanded $262.50 for legal

services in connection with the collection effort.  Meloni warned the homeowners

that if they failed to pay, Marbella could foreclose on its continuing lien or sue

them personally.

The homeowners responded to Meloni, disputing the "debt."  They stated

that they were unaware of "any outstanding administration fees or any past due

maintenance assessment owed" in the amount of $1,000.  August 30, 2013 Letter

at 1 (Doc. 30-15).  They also contended that they paid the August assessment on

time, attaching evidence reflecting the payment.  The homeowners further made

---

[4] Although Affinity threatened in the letter to file a lien on the homeowners' property, the
governing documents indicate that Marbella already had a continuing lien on the property to
secure assessments.

several requests under the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 *et seq.*, including a demand for proof that Meloni was licensed to

collect debts in Florida.

In response, Meloni sent the homeowners another letter on Marbella's

behalf, demanding they pay $1,000 for the fine that was assessed to their account.

Meloni also attached an account statement reflecting a $262.50 attorney's fee and

an unpaid September—but not August—assessment.

The homeowners again disputed the charges.  Concerning the $1,000 charge,

they acknowledged that the HOA had fined them for allegedly violating the

governing documents, but they challenged the validity of the fine.  Regarding the

September monthly maintenance fee, the homeowners maintained that they had

timely paid this fee and submitted evidence of their timely payment.  The

homeowners again lodged several FDCPA requests, once more demanding

evidence that Meloni was licensed to collect debts in Florida.

Meloni responded on December 13 with a final letter to the homeowners

demanding payment.  Meloni maintained that the $1,000 demand reflected a

delinquent fine, not a debt under the FCCPA and also asserted that the Florida

statutes governing HOAs superseded any contrary provision in the governing

documents.  Meloni demanded $1,312.50, representing the $1,000 fine, two $25

late fees assessed on September 11 and November 11, and $262.50 for attorney's

fees.  The homeowners again responded, disputing the validity of the $1,000 fine and $25 late fees.  They also challenged the amount of both the fine and the late fees, explaining that the governing documents capped the fine at $115 and the fees at $11.50.  And for the third time, they demanded evidence that Meloni was a licensed debt collector.

## B.     Proceedings Below

The homeowners filed this lawsuit against Marbella, Affinity, and Meloni,[5] alleging that the five letters sent between May 16 and December 13, 2013 violated the FDCPA, the FCCPA, or both.  The homeowners alleged that Affinity violated two FCCPA provisions when it sent the first two letters demanding $1,000.  They alleged that Affinity violated Fla. Stat. § 559.72(9)[6] by demanding payment of a debt that it knew was illegitimate and Fla. Stat. § 559.72(18)[7] by communicating directly with the homeowners about a debt when it knew that they were represented by counsel.  They further alleged that Marbella was vicariously liable for these FCCPA violations.

---

[5] The homeowners also sued Alexis McDonald, an employee of the Meloni Law Firm, but filed no proof of service on McDonald and failed to prosecute the case against her.  She did not appear below and took no part in this appeal.

[6] This provision prohibits any "person" from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).

[7] This provision prohibits direct communication with a debtor who the collector knows is represented by counsel.  *See* Fla. Stat. § 559.72(18).

The homeowners also brought several counts against Meloni, six of which also named Marbella and are relevant to this appeal.[8]  The homeowners alleged that Meloni violated Fla. Stat. § 559.72(9) by demanding payment of a debt that Meloni knew was illegitimate in the three letters sent on August 9, September 10, and December 13 and threatening to file a lien or institute a foreclosure action when Meloni knew it could do neither.  The homeowners further alleged that Meloni violated Fla. Stat. § 559.72(15) by failing to provide appropriate proof that it was licensed to collect debts in Florida.[9]  They alleged that Marbella was vicariously liable for these FCCPA violations as well.

Affinity and Marbella moved for summary judgment on all claims against them, arguing that they were not debt collectors and that the $1,000 fine was not a debt subject to the FCCPA.  Meloni filed a motion for partial summary judgment and a motion for judgment on the pleadings, urging the court to dismiss some of the claims against it, including all of the FCCPA claims that also named Marbella as a defendant.

---

[8] The remaining counts alleged that Meloni violated the FDCPA in various ways through his communications with the homeowners.  These claims are not before us and remain pending in the district court.

[9] This provision requires a person to "provide adequate identification of herself or himself or her or his employer or other entity whom she or he represents if requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt."  Fla. Stat. § 559.72(15).

The district court granted Affinity's and Marbella's motions, holding that the HOA fine was not a debt and, in any event, Marbella could not be vicariously liable for its agents' FCCPA violations.  The court entered judgment in their favor and then certified the judgment as final for purposes of Rule 54(b) of the Federal Rules of Civil Procedure.  Meloni's dispositive motions remained pending.  This appeal followed.

## II.  LEGAL STANDARD

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party.  *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Likes*, 787 F.3d at 1098 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

## III. DISCUSSION

### A.    Whether the HOA Fine Is a "Debt" Under the FCCPA

Affinity and Marbella argue, and the district court held, that the letters demanding the payment of a fine do not fall within the FCCPA's scope because the

fine, imposed pursuant to Marbella's governing documents, is not a debt under the FCCPA. We disagree.

"To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010).[10] "[T]he mere obligation to pay does not constitute a 'debt' under the FDCPA" and FCCPA. *Id.* at 837. Instead, under both statutes, a debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(6); *accord* 15 U.S.C. § 1692a(5). In other words, the FDCPA and FCCPA apply "only to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes." *Oppenheim*, 627 F.3d at 837. We focus here on the limitation that the debt must arise out of a consumer transaction.

_____

[10] The Florida legislature instructed courts hearing civil actions under the FCCPA to give "due consideration and great weight . . . to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). Because the definition of "debt" is identical in the FDCPA and FCCPA, we look to cases involving both statutes to determine whether the HOA fine is a debt under the FCCPA. *See Oppenheim*, 627 F.3d at 839.

Consistent with our obligation to construe consumer protection statutes broadly in favor of consumers,[11] we have held that "[a]s long as the transaction creates an obligation to pay, a debt is created." *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (alteration in original) (internal quotation marks omitted).  Consequently, even if tort-like conduct triggered an obligation to pay, we have held where the obligation arose from a consumer contract—rather than solely by operation of law—the obligation is a debt under the FDCPA.  For example, in *Brown*, a driver crashed and damaged a truck he had rented pursuant to an agreement with a rental company.  *See id.* at 923.  After the company attempted to collect $825 from the driver under the agreement's terms, the driver brought FDCPA and FCCPA claims against the company's collection agents.  *See id.*  We rejected the collection agents' argument that the FDCPA only covered obligations to pay arising out of an extension of credit, holding that the rental car company's "assertion that [the driver] is obligated as a result of a consumer transaction suffices to bring the obligation within the ambit of the FDCPA."  *Id.* at 924.  Likewise, in *Oppenheim*, we held that where the plaintiff "utilized PayPal's services in a transaction and, according to the terms of that transaction, was under

---

[11] *See Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998) (holding that a consumer protection statute "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent"); *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, [courts] construe its language broadly, so as to effect its purpose." (internal citation omitted)).

a contractual obligation to repay the money" after it was determined that a payment made to him was fraudulent, the payment obligation constituted a debt under the FDCPA.  627 F.3d at 837-38.

By contrast, we have held that where the obligation to pay arises solely by operation of law, the obligation is not a debt under the FDCPA.  In *Hawthorne v. Mac Adjustment, Inc.*, we held that the obligation to pay money is not a debt if it did not "arise out of any consensual or business dealing."  140 F.3d 1367, 1371 (11th Cir. 1998).  There, a tortfeasor brought an FDCPA action against a company attempting to collect damages resulting from the tortfeasor's negligence.  *Id.* Because "no contract, business, or consensual arrangement" existed between the tortfeasor and the injured party, we held that the obligation to pay for damages arising out of the accident did not constitute a debt under the FDCPA.  *Id.*  In essence, our jurisprudence in this area of law can be distilled into the principle that FDCPA and FCCPA "debts" arise from actual—as opposed to social—contracts.

Affinity and Marbella argue that the $1,000 fine is akin to the negligence damages in *Hawthorne*.  They also rely on cases holding that a government-imposed fine, which does not "stem from a consensual transaction," is not a debt under the FDCPA.  *See, e.g.*, *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1074-75 (7th Cir. 2001) (collecting district court cases and holding that an unpaid municipal fine is not a debt).

13

We find these analogies unpersuasive.  Affinity and Marbella's reasoning is contrary to our precedent and inconsistent with the remedial purpose of the FDCPA and FCCPA.  *Hawthorne* and the municipal fine cases cited by Affinity and Marbella each concern payment obligations that only arose by operation of law.  *See, e.g., Hawthorne*, 140 F.3d at 1371; *Gulley*, 664 F.3d at 1074-75.  But here, unlike in *Hawthorne* and *Gulley*, the homeowners' obligation arises from a contract—the governing documents—that explicitly treats HOA fines as assessments.  According to the governing documents, "[a]ny fine levied against an Owner shall be deemed an individual assessment, and if not paid when due all of the provisions of [the governing documents] relating to the late payment of assessments shall be applicable."  Consequently, the central question is whether a contractual obligation to pay HOA assessments creates a "debt" under the FCCPA.

We hold that it does.  HOA assessments stem directly from the consensual home-purchase transaction.  When a home buyer must contractually agree to pay homeowners' assessments in order to purchase a home, that home buyer takes on "debts" for those assessments under the FCCPA.  *See Brown*, 119 F.3d at 925 (holding that, under the FDCPA, where "the transaction creates an obligation to pay, a debt is created"); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC,* 698 F.3d 290, 294 (6th Cir. 2012) (holding that because a homeowner's obligation to pay assessments derives from the original home-

purchase transaction, the obligation constitutes a "debt" under the FDCPA);

*Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 481 (7th Cir. 1997)

(holding that past-due homeowners' assessments qualify as "debts" under the

FDCPA).  Because the governing documents contain a provision calling for the

fine levied against the homeowners to be "deemed an individual assessment," the

contractual language renders the fine in this case a "debt" subject to the FCCPA.

The fact that the obligation may have been triggered by tort-like behavior

does not take it out of the realm of FCCPA debts.  *Brown*, in particular, is

instructive.  *Brown* concerned a car accident, a fact pattern typically associated

with common law negligence claims.  But the $825 the driver was obligated to pay

did not constitute negligence damages arising out of tort law; it was comprised of

specific fees and damages provided for in the underlying rental contract.  By

comparison, here, the HOA or the homeowners' neighbors may have had common

law nuisance or other non-contractual claims against the homeowners.  But the

actual obligations pursued by the HOA in this case were contractually treated as

assessments.  As a result, the homeowners' obligation to pay a fine is a debt

because the HOA assessments at issue—like the fees at issue in *Brown*—arose

directly from a consumer contract.  *See Brown*, 119 F.3d at 923-24; *see also*

*Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744-45 (7th Cir.

2016) (holding that a contractual penalty for failure to pay for parking in a private lot constituted a debt under the FDCPA).

By agreeing to the terms of the governing documents, the homeowners acknowledged that a failure to comply with HOA requirements could result in a fine that would be deemed and treated as an individual assessment.  Thus, their obligation to pay an assessment for a claimed breach of the governing documents arose out of an underlying consumer transaction.  *See Brown*, 119 F.3d at 923-24.  Affinity and Marbella's disregard for the broader, contractual context of the homeowners' payment obligation—which explicitly deems HOA fines to be assessments—conflicts with our holdings in *Brown* and *Oppenheim*.  For these reasons, we conclude that the term "debt" encompasses the homeowners' obligation to pay a fine pursuant to the governing documents.[12]  Accordingly, the district court erred in dismissing the claims against Affinity and Marbella on the ground that the collection letters were not governed by the FCCPA.

---

[12] Affinity also argues that "Mr. Agrelo and Ms. Fernandez are not 'consumers' vis-à-vis Affinity or Marbella."  But this argument simply duplicates the defendants' argument that the fine is not a "debt" under the FCCPA, as "debt" and "consumer debt" have the same statutory definition.  Fla. Stat. § 559.55(6).  Moreover, "consumer" is separately defined as "any natural person obligated or allegedly obligated to pay any debt."  Fla. Stat. § 559.55(8).  Because we hold that the HOA fine at issue is a "debt," the homeowners are necessarily "consumers" under the statute.

**B.    Issues Specific to Marbella**

The homeowners' claims against Marbella arise out of Affinity's two letters demanding payment of the fine and Meloni's three letters demanding payment of the fine and other fees.  The district court dismissed these claims for two additional reasons, both of which we reject.

First, the district court erroneously held that because Marbella was not a "debt collector" under the FCCPA, it could not be liable for violating the statute. Although the FCCPA is modeled after the FDCPA, the two statutes are not identical in all respects.  Unlike the FDCPA, the FCCPA's proscriptions are "not limited to debt collectors."  *Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 812 n.1 (Fla. Dist. Ct. App. 2002).  *Compare* 15 U.S.C. § 1692e (prohibiting "[a] debt collector" from engaging in "any false, deceptive, or misleading representation or means in connection with the collection of any debt"), *and id.* § 1692f (prohibiting "[a] debt collector" from employing "unfair or unconscionable means to collect or attempt to collect any debt"), *with* Fla. Stat. § 559.72 (regulating the conduct of any "person" collecting debts).  Marbella is not exempt from the FCCPA simply because it is not a statutorily defined debt collector.

Second, and relatedly, the district court held that Marbella could not be *vicariously* liable for the FCCPA violations of Affinity or Meloni because such vicarious liability only extends to principals who are themselves debt collectors.

We acknowledge that some courts have reached this conclusion in the context of the FDCPA. *See, e.g.*, *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'"); *Bent v. Smith, Dean & Assocs., Inc.*, No. 3:11–cv–66-J-TEM, 2011 WL 2746847, at *3 (M.D. Fla. July 14, 2011) (holding under the FDCPA that only a debt collector can be vicariously liable for the collection practices of its debt collecting agents). But these cases rest on the observation that FDCPA liability is expressly limited to "debt collectors." As we explained above, however, the FCCPA has no such express limitation. Thus, cases considering vicarious liability under the FDCPA are inapposite.

In any event, the question of whether Marbella can be vicariously liable for FCCPA violations of its agents, Affinity and Meloni, is one of Florida law. The district court failed to apply Florida agency law to decide this issue on summary judgment, and on appeal Marbella cites no Florida authority supporting its position. We therefore decline to decide this issue and remand for the district court to do so under Florida law in the first instance. *See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 911 F.2d 1548, 1550 n.3 (11th Cir.

1990) (declining to consider a claim not first decided by the district court).[13]

Because we reverse the entry of summary judgment on substantive grounds, we do

not consider the plaintiffs' procedural arguments in support of reversal.[14]

## IV. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in

favor of Affinity is reversed, and the district court's grant of summary judgment in

favor of Marbella is vacated.  This action is remanded for further proceedings

consistent with this opinion.

### REVERSED IN PART, VACATED IN PART, AND REMANDED.

---

[13] On appeal, Marbella also argues that the fine it levied on the homeowners was permissible under Florida law.  Because the district court addressed neither the merits of this issue nor its import for the case, we decline to address Marbella's argument.  We also decline to consider Marbella's arguments regarding the legitimacy of the late fees and attorney's fees because, based on its ruling that Marbella "at no point attempted to collect a consumer debt" and could not be vicariously liable for Meloni's alleged FCCPA violations, Order at 15 (Doc. 118), the district court did not decide these issues.

[14] We **DENY** the plaintiffs' extraordinary and unsupported request to reassign this case on remand.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 09, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14136-BB
Case Style: Jorge Agrelo, et al v. Affinity Management Services,, et al
District Court Docket No: 1:14-cv-21192-JEM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellees.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs