## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**JORGE A. AGRELO and OLGA M.
FERNANDEZ, individuals;**
    **Plaintiffs,**

                                          **Case No.: 1:14-cv-21192**

**vs.**

**THE MELONI LAW FIRM, a/k/a
EDOARDO MELONI, P.A.; AFFINITY
MANAGEMENT SERVICES, LLC, a
limited liability corporation; MARBELLA
PARK HOMEOWNER'S ASSOCIATION,
INC., a Non-Profit Corporation;
EDOARDO MELONI, ESQ., an individual;
and ALEXIS MCDONALD, an individual,**
    **Defendants.**
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFFS'
### SECOND MOTION TO EXTEND PRETRIAL DEADLINES.

COME NOW, Defendants THE MELONI LAW FIRM, a/k/a EDOARDO MELONI, P.A.,

and EDOARDO MELONI, ESQ. (hereinafter "MELONI"), by and through their undersigned

counsel, and hereby file this Response to Plaintiffs' Second Motion to Extend Pretrial Deadlines,

and state the following in support thereof:

### Summary of Arguments

"I'm a lousy chess player. It takes me 15 moves to get to checkmate whereas somebody

else can do it in eight."[1] This admission by Plaintiffs' counsel at last month's discovery hearing is

an apt description of the way he has litigated this case. Counsel has taken a run-of-the-mill FDCPA

case based on *four letters* sent by Meloni and turned it into a never-ending, poorly managed,

abusive lawsuit that he now seeks to extend yet again.

_____

[1] *See,* Exhibit 1 at p. 45.

The parties agreed to an initial discovery deadline of October 14, 2014. The Court ultimately set a discovery deadline of October 15, 2014 and then extended that deadline to November 26, 2014.  Meloni efficiently litigated the case from inception and then, filed two (2) dispositive motions in December 2014. Those motions remain pending. Then, after the close of the discovery and substantive motion period, when the case was originally set for trial in January 2015 and Meloni sought a brief extension to pre-trial deadlines, Plaintiffs' filed a brief a brief in opposition in which they proclaimed there was ***"no good reason … for deviating from the Court's Scheduling Orders.***"

Nonetheless and despite that proclamation, Plaintiffs have flouted the Court's deadlines time and again in this case by filing motions beyond the deadlines established by the Court. Now, more than three (3) years later and after having been given additional time to conduct discovery, Plaintiff resort to mischaracterization and half-truths in their latest attempt to obtain relief from the Court.

## I.     Legal Standard.

"Rule 16 (a)'s good cause standard "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) (unpublished), citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). The scheduling order may only be amended for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *See*, *Sosa,* 133 F.3d at 1418.

II.     **Factual/Procedural Background.**

### Plaintiffs had a full opportunity to conduct discovery in 2014

The facts supporting the Plaintiffs' FDCPA/FCCPA claims against Meloni are simple and straight-forward. Meloni sent four (4) letters to Plaintiffs trying to collect money Meloni's client indicated was owed to the client by the Plaintiffs. Those letters are facially innocuous in that they contain no offensive language or threat of bodily harm. Plaintiffs sent responses to Meloni's letters questioning some of the amounts claimed due. Plaintiffs are suing Meloni generally claiming the letters sought to collect money that was not due. *See,* DE 30, generally.

On July 23, 2014, Plaintiffs served their initial discovery requests on Meloni. The discovery requests consisted of: 1) 100 Requests for Admission; 2) 30 interrogatories; and 3) 27 requests for production of documents. Meloni timely responded to the discovery requests in August 2014. Thereafter, Plaintiffs' counsel sent two (2) letters to defense counsel claiming Meloni's Response to the Request for Admissions and Request for Production were not in compliance with Meloni's obligations under the discovery rules. Meloni thereafter served an Amended Response to Plaintiffs' Request for Admissions to correct a non-substantive issue that existed in the original Response. No action was taken in response to Plaintiffs' complaint about Meloni's Response to Plaintiffs' Request for Production. Plaintiffs filed no motion related to Meloni's discovery responses with respect to either discovery request.

Plaintiffs did, however, file a Motion to Compel discovery responses from then co-Defendant Marbella (DE 55). That Motion was summarily stricken by the Court due to Plaintiffs "failure to follow the discovery procedures established by the trial scheduling order." *See*, DE 56.

On October 1, 2014, Plaintiffs filed an unopposed motion to extend the discovery deadline by two (2) weeks (DE 57). No mention was made in that motion of any discovery dispute between

Plaintiffs or Meloni in that motion. On October 8, 2014, the Court granted the motion and reset certain deadlines, giving the parties until November 26, 2014, to complete discovery.

On October 28, 2014, Plaintiffs took the deposition of Eduardo Meloni. During deposition, Meloni identified one of the letters attached to the Complaint, a lien his law firm filed with respect to a person other than the Plaintiffs, and a declaration from Marbella.  Plaintiffs did not present the other letters attached to the Amended Complaint to Meloni at deposition nor any other liens or foreclosure documents created by Meloni's law. Meloni also disclosed Jami Bohannon as an employee of the law firm.

In addition to Mr. Meloni's name, two of the letters attached to the Complaint and sent to Plaintiffs contain the name "Alexis McDonald," a former employee of Meloni and a named Defendant in the case.[2] In answering Plaintiffs' interrogatories in August 2014, Meloni had provided Ms. McDonald's last known address. At no point did Plaintiffs indicate a desire or intention to depose Ms. McDonald or Ms. Bohannon prior to the November 26, 2014 discovery deadline.

On December 1, 2014, Meloni filed a Motion for Partial Summary Judgment (DE 74) and a Motion for Judgment on the Pleadings (DE 75). Plaintiffs filed opposition briefs to each motion (DE 79 and 80, respectively). In neither brief, did Plaintiffs indicate a need for additional discovery or raise the issue of the alleged impropriety of Meloni's responses to Plaintiffs' written discovery.

On January 15, 2015, Meloni filed a Motion to Extend Pretrial Deadlines seeking an extension of the Court's deadlines for filing the joint pretrial stipulation, jury instructions, and voir dire questions (DE 104). Plaintiffs filed an opposition brief the next day stating there was ***"no good reason … for deviating from the Court's Scheduling Orders."*** *See*, DE 106 (emphasis

---

[2] There is no evidence Ms. McDonald was ever served a Summons and Complaint in this case.

added). The Court nonetheless granted Meloni's Motion and reset the relevant deadlines for April 2015.

On January 20, 2015, the parties finalized and filed the Joint Pre-Trial Stipulation (DE 108) in which Meloni stipulated to the following facts:

a. Plaintiffs, Jorge A. Agrelo and Olga M. Fernandez, are, husband and wife, who at all times relevant hereto live at and hold title to the real property located at 8272 NW 198th Street; Miami, FL 33015.  The property is the Plaintiffs' homestead property, and they are both members of Marbella Park Homeowner's Association, Inc. ("Marbella"). Marbella Park Homeowner's Association, Inc., is a duly formed and organized Florida non-profit corporation functioning as a homeowner's association located in Miami-Dade County, Florida, with mailing address in 1430 NW 15th Avenue; Miami, FL 33125. Affinity Management Services, LLC ("Affinity"), is a Florida Limited Liability Company, doing business at 1430 Northwest 15th Avenue; Miami, Florida 33125, primarily as a community association management company. Defendant Edoardo Meloni is an attorney licensed to practice law in the State of Florida and the owner of Edoardo Meloni, P.A. a/k/a The Meloni Law Firm ("MELONI LAW").   On or around February 2001, Edoardo Meloni, P.A. entered in a partnership with Steven A. Fein, P.A. Such general partnership was registered in the Florida Department of State, Division of Corporations on February 27, 2001 as "Fein and Meloni."

b. Fein and Meloni entered into a retainer agreement with MARBELLA on February 8, 2012 to represent the Association's interest in general litigation, including but not limited to, collection services.

c. Defendant Edoardo Meloni, Esq. was (and is) a principal in Edoardo Meloni P.A., which in turn was a partner in "Fein and Meloni" until September 30, 2014 when Edoardo Meloni, Esq. and Edoardo Meloni P.A., commenced practice as "The Meloni Law Firm."

d. "The Meloni Law Firm" is a fictitious name registered with the Florida Department of State, Division of Corporations on September 24, 2013.  Edoardo Meloni, P.A. is the sole shareholder and owner of Defendant "The Meloni Law Firm."

e. AFFINITY entered into a contract with MARBELLA on or about November 1, 2012 to manage the HOA day-to-day services and

collection pursuant to the provisions of MARBELLA's governing documents and applicable Florida Law.

f.    On January 29, 2013 Plaintiffs received a notice from AFFINITY in connection with an alleged violation of the MARBELLA's governing documents. Specifically the notice claimed that unapproved construction has resulted in relocation of the fence and removal of plants.

g.    AFFINITY sent a notice of fine dated March 26, 2013, advising Plaintiffs that they had been fined in the amount of $1,000.00, in connection with the alleged violation. This letter was received by Plaintiffs on April 1, 2013.

h.    On May 16, 2013, Plaintiffs were contacted by AFFINITY on behalf of MARBELLA via mail. This letter is entitled "Final Warning."

i.    On June 28, 2013, Plaintiffs were contacted again by AFFINITY on behalf of MARBELLA via mail. This letter entitled "Final Warning."

j.    On August 9, 2013, FEIN & MELONI sent a letter to Plaintiffs attempting to collect a debt AFFINITY and MARBELLA claimed was owed.  The letter contained a Statement of Account created by AFFINITY detailing the amounts due.

k.    On September 2, 2013, Plaintiffs personally sent a letter, hereinafter "Plaintiff's Letter 1" to MELONI via first class and certified mail in response to FEIN & MELONI'S Letter 1. This letter was received by Meloni Law on September 4, 2013.

l.    On September 10, 2013, MELONI    sent a letter to Plaintiffs attempting to collect the debt AFFINITY and MARBELLA claims was owed. The letter contained a Statement of Account created by AFFINITY detailing the amounts due.

m.    On October 7, 2013, Plaintiffs sent a second letter, hereinafter "Plaintiffs' Letter 2" to MELONI LAW via first class and certified mail in response to Meloni's September 10, 2013 letter.  This letter was received by MELONI on October 8, 2013.

       n.     On December 13, 2013, Meloni sent a letter to Plaintiffs were contacted for third time via certified mail by MELONI LAW. This letter was received by Plaintiffs on December 14, 2013. The letter contained a Statement of Account created by AFFINITY detailing the amounts due.

       o.     AFFINITY, on behalf of MARBELLA, assessed two (2) late fees of $25 each, on the Plaintiffs' statement dated December 13, 2013 for alleged late payments of Association assessments corresponding to September 2013 and November 2013.

       p.     On January 8, 2014, Plaintiffs sent a letter, hereinafter "Plaintiffs' Letter 3," to MELONI . This letter was received by MELONI on January 10, 2014.

*See,* DE 108.

Plaintiffs' Exhibit List to the Pre-Trial Stipulation listed various documents prepared by the Meloni firm including affidavits of amount due, claims of lien, and "legal packages" sent by Meloni to co-Defendant Affinity. *See*, DE 108-1. ***None*** of these documents were related to the Plaintiffs or their dispute with the co-Defendants. While Meloni objected to the Plaintiffs use of these exhibits at trial, Meloni ***did not*** object on authenticity grounds. *Ibid.*

On January 30, 2015, the Court granted the co-Defendants summary judgment (DE 118).[3] The Plaintiffs ultimately appealed that decision in September 2015 (DE 159). While the appeal was pending, Plaintiffs continued to aggressively litigate the case filing several motions. Meloni was not involved in the appeal. The Court's Order granting summary judgment to the co-defendants was reversed on appeal and returned to this Court in December 2016. Plaintiffs then engaged in extensive motion practice in the absence of a scheduling order.[4] For example, Plaintiffs filed a motion requesting the Court deny Meloni's pending dispositive motions or allow Plaintiffs

---

[3] Meloni affirmatively chose not to join the co-Defendant's Motion for Summary Judgment as Meloni believed it was unlikely the 11th Circuit would agree with the co-Defendant's argument if this Court granted summary judgment.
[4] Ultimately, the two (2) co-Defendants settled out of the case and were dismissed (DE 223 and 234).

to supplement their responses to those motion (DE 169). Again, notably absent from that Motion is any indication Plaintiffs did not have a fair opportunity to conduct discovery or that Meloni had impeded Plaintiffs' efforts to conduct discovery. What the Motion did contain (consistent with Plaintiffs' practice throughout this litigation) is improper argument detailing the substance of the supplemental argument Plaintiffs' would make if granted leave. That is, Plaintiffs argued essentially "if we are granted leave, here is what we will argue." To that end, Plaintiffs cited case law supporting not their request for leave but purportedly supporting their position Meloni's dispositive motions should be denied on the merits. Thus, Plaintiffs' filed what amounted to an unauthorized supplemental brief under the guise of a motion for leave. Regardless, the Court denied Plaintiffs' Motion by order dated September 21, 2017 (DE 219).

In May 2018, the Court entered an Order requiring the parties to file a joint scheduling report (DE 242). The Order was materially indistinct from the same Order issued by the Court at the inception of the case four (4) years earlier (DE 4). Meloni did not view the Court's May 2018 Order as an invitation to essentially start the case over, but instead to get the case scheduled for trial. As Plaintiffs had previously indicated the case was ready for trial by opposing Meloni's request for a continuance and preparing the Joint Pretrial Stipulation proclaiming there was no need to deviate from the prior scheduling orders and implicitly indicating they were prepared to go to trial, Meloni assumed Plaintiffs would agree to simply set a new trial date with deadlines for filing a new joint pretrial stipulation and motions in limine. Meloni was wrong; Plaintiffs' counsel requested Meloni agree to what would have amounted to a "mulligan."

On May 29, 2018, the parties filed their Joint Scheduling Report (DE 246). As expected, Plaintiffs requested the Court enter entirely new deadlines for everything from amending the pleadings to ending discovery (DE 246-1). Conversely, Meloni indicated: "**The amendment to**

**pleadings, discovery, and dispositive motion deadlines have all long-since passed**. Defendants do not agree to reset any expired deadlines." *See,* DE 246 at p. 3 (emphasis in original). On May 31, 2018, the Court entered an Order revising the pending scheduling order that, without making any findings, *inter alia*, re-opened discovery and established August 1, 2018 as the new discovery deadline. That Order also addressed substantive motion issues by noting that the revised deadline did not serve to alter the previously established substantive motion deadlines.  See DE 247, footnote 1.  That same day, the Court issued an Omnibus Order denying several of Plaintiffs' pending motions and setting a June 21, 2018 deadline for the parties to file notices of supplement authority and a memorandum related to Meloni's dispositive motions. *See,* DE 248.

### Plaintiffs' 2018 discovery requests

Given this new discovery window, Plaintiffs served on Meloni: 1) ***181*** Requests for Admissions (since many of the Requests were directed to numerous documents attached to the Request for Admissions as exhibits and served to ask sub-part admissions, the number of actual Requests for Admissions with sub-parts was likely closer to 300); 35 Requests for Production of documents; and 3) 25 interrogatories (as many of the Interrogatories contained numerous sub-parts, the total number of interrogatories was likely closer to 100).[5]

It is important for the Court to remember at the time these discovery requests were served more than ***three years*** had passed since the parties filed the Joint Pre-Trial Stipulation (DE 108) and Plaintiffs had represented to the Court there was ***"no good reason … for deviating from the Court's Scheduling Orders.***" *See*, DE 106 (emphasis added). In the Pre-Trial Stipulation, Meloni stipulated to the essential facts of the case and did not raise any authenticity objections to exhibits

---

[5] Complete copies of the discovery requests are in the court file at DE 258-1, 258-2, and 258-3.

on Plaintiff's Exhibit List that were materially indistinct from those attached to Plaintiff's 2018 discovery requests.

Moreover, nearly ***four years*** had passed since Plaintiffs served and Meloni responded to Plaintiffs initial Requests for Admissions, Request for Production, and Interrogatories. Plaintiff never sought court intervention with respect to Meloni's responses to those discovery requests many of which mirrored the content of the 2018 discovery requests. Many of the discovery requests themselves were simply absurd or did not comply with the Federal Rules of Civil Procedure. For example, "Request for Admission 1" asked Meloni to admit:

> The "pdf" versions of the several documents attached hereto as Exhibit "A" are true, correct, and authentic copies of the documents which they purport to be. The documents attached in this composite Exhibit are public record involving "CLAIM OF LIEN FOR HOMEOWNERS ASSESSMENTS" and/or "AMENDED CLAIM OF LIEN FOR HOMEOWNERS ASSESSMENTS" filed by You and/or the Law Firms and/or the Law Firms' agent(s) against Homeowner(s).

*See,* DE 258-2 at p. 4.

Exhibit "A" was a composite exhibit of 14 separate documents. *Ibid.* at pp. 49 – 76. Federal Rule of Civil Procedure 36 permits the use of Requests for Admissions on the genuineness of documents. However, Rule 36(a)(2) does not permit one request for multiple documents. *See, Swofford v. Eslinger*, No. 6:08–cv–66–Orl–35DAB, 2009 WL 961115, at *3 (M.D. Fla. Apr. 7, 2009) ("To the extent the authenticity or provenance of a particular document is truly at issue, it may be the subject of a Request for Admission, *with each document separately stated*, as set forth in the Rules") (emphasis added).

With respect to the interrogatories, Plaintiffs attempted to conduct a second deposition of Meloni via interrogatories. Interrogatory Number 7 was a prime example:

> From January 1, 2012 to December 31, 2014, identify each communication You, and/or the Law Firms, and/or the Law Firms' agent(s) had with any Homeowner for the purpose of collecting debts (e.g. past-due and unpaid Assessments, fines,

late fees, etc.) allegedly owed to Marbella. Examples of these communications are dunning letters, collection calls, responses to collections disputes, lien filings, foreclosing proceedings, etc. For each communication identified, include the following:

      a. the type of communication (e.g., letter, call, email, fax.);
      b. the date & time of the communication;
      c. the purpose of the communication;
      d. the substance of the communication;
      e. the person initiating the communication;
      f. the parties to the communication;
      g. the following particulars of the communication:

            i. (for telephone calls) the result of the call (e.g., conversed, answered, not answered, answering machine (or voicemail), answered, (no) message left; caller hung up, called party hung up, disconnect, etc.);
            ii. (for e-mail communications) the sender's email address;
            iii. (for e-mail communications) the recipient's or recipients' email address or addresses;
            iv. (for facsimile communications) the sender's facsimile number;
            v. (for facsimile communications) the recipient's facsimile number;
            vi. (for letters) the addressee's name and address;
            vii. (for letters) the recipient's name and address;
            viii. (for letters) the person that prepared the letter; and,
            ix. (for letters) the person who signed the letter.

*See,* DE 258-1 at p. 13.

Magistrate Judge Goodman referred to these types of interrogatories as improper "mini-deposition(s)" during the discovery hearing last month. *See,* Exhibit 1 at p. 40. As for the document request, Plaintiffs absurdly requested copies of the Exhibits to the pending Complaint and, sought copies of every document Meloni had sent to or received from any (non-Plaintiff) Marbella homeowner for a ***three-year period beginning more than six (6) years ago***. Specifically Request Number 1 sought:

All documents constituting communications, including any emails, from January 1, 2012 to December 31, 2014, sent by You or by the Law Firms or by the Law Firms' agent(s) to any Homeowner(s), other than the Plaintiffs, for the purpose of collecting debts (e.g. past-due and unpaid Assessments, fines, late fees, etc.) allegedly owed to Marbella. Examples of these communications are dunning letters, responses to collections disputes, lien filings, foreclosing proceedings, etc. These documents are relevant to test the extent of your knowledge of, and practical

application of, Marbella's Docs and Florida and federal law to the collection of debts for Marbella at all times relevant to the allegations in Plaintiffs' Complaint.[6]

*See,* DE 258-3 at p. 6.

Given the fact many of Plaintiffs' 2018 discovery requests were redundant of Plaintiff's 2014 discovery requests and objectionable for the same reasons, Meloni believed that once he served responses/objections, Plaintiffs would do nothing other than perhaps, bluster as they did in 2014. In late July 2018, Meloni served timely responses to the discovery requests. When Plaintiffs' counsel raised an objection to those responses, defense counsel attempted to resolve the matter in good faith despite believing the responses/objections were proper.

As demonstrated by the January 2015 Pre-Trial Stipulation, Meloni has been willing to stipulate to relevant facts in the case and is not attempting to "disown" any documents his firm has created. So, when Plaintiff's counsel contacted defense counsel regarding Meloni's discovery responses and indicated he wanted to have a "telephone conference … to discuss the objections," defense counsel took that to mean the dispute was something that could be resolved relatively quickly. Instead of agreeing to telephone conference at that time, defense counsel requested Plaintiff provide some detail with respect to the discovery objections he did not believe were proper. Defense counsel was envisioning Plaintiffs' counsel would provide a "cut-to-the-chase" indication of what his clients' goal was in serving the 2018 discovery requests. Instead, Plaintiffs' counsel proceeded to send defense counsel a 238-page, single-spaced "legal memorandum"

---

[6] Request Number 10 in Plaintiffs' 2014 discovery requested:

> …copies of all communications and every and each responses between the Law Firms and the homeowners referred by the Association for collections including but not limited to any letter, notice, statements and/or correspondences to the alleged account demanding payment during the two (2) years prior to the filling of this lawsuit, if any of this communication was recorded in the clerk [sic] office; indicate the book and page number.

arguing every one of the scores of discovery disputes Plaintiffs were contending existed with respect to the 2018 discovery requests.[7]

Thereafter, defense counsel spent countless hours pouring over counsel's legal memorandum and trying to address some of the concerns raised only to find out at the discovery hearing in front of Magistrate Judge Goodman the entire situation could have been avoided had Plaintiff's counsel simply attempted in good faith to resolve the issue instead of needlessly running up his fees and those of defense counsel.

### The August 17, 2018 Discovery Hearing

In retrospect, it was a shame the Court had to give up important hearing time to conduct the discovery hearing. At that hearing, two things quickly became apparent: 1) Plaintiffs' counsel decided to use a stunt at the hearing to attempt to unfairly malign Meloni and his counsel; and 2) the entire discovery dispute could have been resolved prior to the hearing if Plaintiffs' counsel had any real interest in resolving it. In fact, there was no real need for Plaintiffs to serve the 2018 discovery requests, period.

At the beginning of the hearing, Plaintiff's counsel opened a large, empty "magic envelope" and pretended to empty its non-existent contents on the counsel table. *See*, Exhibit 1 at p. 5. Being bereft of substance as to the discovery motion, counsel resorted to theatrics. Counsel at first denied he was trying to be dramatic but then admitted that plain fact. Of course, the envelope could also have represented every document that Plaintiffs did not already have in their possession or, better yet, every effort Plaintiffs' counsel took to seek a remedy with the Court for what he claimed at the hearing and has indicated to this Court were Meloni deficient responses to Plaintiffs' 2014 discovery requests. After the theatrics played out, Plaintiffs' counsel *finally* cut to the chase

---

[7] The email exchange between counsel is DE 258-11. Plaintiffs' counsel's legal memorandum is DE 258-8, 258-9, and 258-10.

in response to Magistrate Judge Goodman's request that he do so, stating: "What I can tell you is that a lot of the requests to produce were aimed at authenticating documents." *Ibid.* at p. 8. He later acknowledged "authentication" of documents was the primary purpose of all Plaintiffs' discovery requests.[8]   Of course, authentication of documents by Meloni is a non-issue in the case.   As demonstrated by the Joint Pre-Trial Stipulation, Meloni has not objected to the authenticity of any documents he or his law firm have created. See, DE 108-1. Given this fact, if he truly believed he needed to authenticate documents, there would be no reason for Plaintiffs' counsel to do anything other than what was done in the Pre-Trial Stipulation, i.e. request Meloni stipulate to the authenticity of documents created by him or his law firm. That would have ended the issue without the need for hundreds of discovery requests or a discovery hearing. Unfortunately, the self-admitted "lousy chess player" chose to take 15 moves to accomplish what the typical lawyer could have accomplished in 8 (or less).

When defense counsel requested Plaintiffs' counsel provide the "nuts and bolts" of what he was seeking in discovery prior to the hearing, counsel could have said, "I need your client to stipulate to the authenticity of documents his office created." If that had happened, it is clear Meloni would have done so based on the history of the case.

First, in the Pre-Trial Stipulation, Meloni stipulated to the authenticity of documents his office created even though he does not believe those documents are relevant as they relate to debts allegedly owed by persons other than the Plaintiffs. Second, at the discovery hearing Meloni stipulated to the authenticity of *every* document his law firm has ever created, all the exhibits to the Complaint, and all the exhibits attached to any deposition taken in the case. He further agreed

---

[8] Once this became known, Judge Goodman was able to quickly resolve the issues by acknowledging Meloni's stipulations and by making record inquiry as to Meloni's willingness to stipulate to authenticity.

to file a stipulation that he and his law firm were "debt collectors" for the purposes of this case and filed that stipulation the Monday following the Friday hearing (DE 271).

There is no question that had Plaintiffs' counsel truly been interested in resolving the discovery issues in good faith, he could have articulated the authenticity requests by telephone or email.  He chose not to do so prior to the hearing and, despite representing to Magistrate Judge Goodman that he would work with defense counsel to try to "come to some kind of a resolution on the remaining discovery issues" (*see*, Exhibit 1 at p. 44), he has largely ignored defense counsel's attempts to continue working to resolve any remaining issues.[9] Instead, he has focused his attention on continuing to over-litigate the case with one purpose in mind: "to make life so miserable for [defense counsel], to provide busy work for us, so that our client will capitulate to the plaintiffs' settlement demands in this case." *Ibid.* at p. 14.

In fact, Plaintiffs' counsel's own words prove the accuracy of defense counsel's suspicions. On September 11, 2018, Plaintiff's counsel filed a Motion for Leave to File Supplemental Response in Opposition to Meloni's Defendants' Motion for Partial Summary Judgment and for Leave to File Dispositive Motions beyond Date Provided in Scheduling Order (DE 281).[10] In that Motion, Plaintiffs seek a "mulligan" on their responses to Meloni's pending dispositive motions. One of the rationales Plaintiffs suggest supports the Court granting that Motion is their belief "granting the relief sought herein would promote settlement." *See*, DE 281 at p. 19. The quote phrase is code for: "Judge if you can help us make Meloni more miserable, we believe he will capitulate to our settlement demands."

---

[9] Attached hereto as Exhibit 2 is a series of emails defense counsel has sent to Plaintiffs' counsel since the discovery hearing indicating defense counsel's desire to continuing working with Plaintiffs' counsel to resolve any remaining discovery issues. Plaintiffs' counsel has essentially ignored these emails.

[10] While the Motion fails to indicate as such, it is actually the second motion to supplement filed by Plaintiffs. The first such motion was filed in December 2016 (DE 169) and denied by the Court in September 2017 (DE 219).

Plaintiffs' counsel's chess game is easy to diagnose. Since the matter returned from appeal, his strategy has been to try to make this litigation as agonizing (and costly) as possible for Meloni in hopes of prying a high settlement. When that strategy did not work with his latest round of discovery and by forcing Meloni to attend a discovery hearing when a resolution to the discovery dispute could have easily been had, he has resorted to the only other play in his playbook, vexatiously litigating the case. This tactic has led counsel to make representations to this Court that are, on their best day, half-truths or worse.

### Plaintiffs' counsel continues to misstate the record and attempt to improperly malign Meloni and his counsel.

Plaintiffs' Motion contains what can best be described as half-truths, misstatements, and defamatory accusations. Meloni briefly addresses some of the Plaintiffs' counsel's transgressions, as follows:

- "Plaintiffs challenged those objections but Meloni Law simply persisted in their evasive and obstructive tactics." DE 274 at p. 2.

  This statement relates to Plaintiffs' **2014 discovery requests**. However, the record proves that Plaintiffs took *no* action with the Court to challenge Meloni's responses. If Meloni tactics were truly "evasive and obstructive," one would have expected Plaintiffs' counsel to bring the matter before the Court for review. In fact, one could argue he had a legal and ethical obligation to his clients to do so. Having chosen to do nothing in 2014, Plaintiffs' counsel waived all claims that the objections were "evasive and obstructionist". By claiming otherwise, counsel deprives Meloni of due process on the issue, and more importantly, he misstates the record and defames Meloni and his counsel.

- "After complaining to the Court as to Meloni's Law's discovery misconduct and after appeal, the Court reopened discovery." *Ibid.*

  Here, Plaintiffs implicate the Court in a false narrative suggesting a correlation between Plaintiffs' baseless allegations of discovery misconduct by Meloni in 2014 and the Court's decision to re-open discovery after appeal. Nothing in the Order Revising Scheduling Order even hints at a correlation. Yet, Plaintiffs attempt to convince the Court that one of its motivations in entering the Order Revising Scheduling Order was Plaintiffs' baseless claims of discovery misconduct by Meloni. To be clear, the docket entries in this case now number 282. Absent among

those 282 entries is any document finding Meloni has engaged in any discovery misconduct.

- "Meloni Defendants … filed a –one line— Stipulation for Trial resolving just a single discovery issue." *Ibid.* at p. 4.

> This statement is intended to paint Meloni and defense counsel as having failed to comply with Magistrate Judge Goodman's discovery order. In fact, the Order did not require Meloni to file *any* stipulations with the Court. *See,* DE 272. Instead, at the discovery hearing, defense counsel agreed to file a stipulation with the Court that Meloni was a "debt collector." *See,* Exhibit 1 at pp. 30-31 (Judge Goodman: "…you will file that stipulation on the record by Monday.") No other stipulations were required to be filed by Meloni.

- Pursuant to Magistrate Judge Goodman's direction, the parties were to continue to communicate to determine if any remaining discovery issues raised by Plaintiff at the August hearing could be resolved by stipulation. In their Motion, Plaintiffs claim Meloni has "refused … to agree on any of the offered stipulations" presented by Plaintiffs' counsel since the hearing. *See*, DE 274 at p. 5.

> This is simply inaccurate as it fails to paint a complete picture of what has occurred since the hearing. Counsel exchanged emails on August 20, 2018, regarding what occurred at hearing. In his email, Plaintiffs' counsel acknowledged the Stipulation Meloni had filed with the Court earlier the same day. He then claimed Magistrate Judge Goodman ordered Meloni to file other stipulations with the Court as well. Defense counsel disagreed with this statement (which is proven inaccurate by the hearing transcript and by the fact the Magistrate entered an Order covering the subject matter of the stipulations at DE 272) and offered additional stipulations to Plaintiffs' counsel and indicated a willingness to consider additional stipulations. *See,* Exhibit 2.

> On August 23, 2018, Plaintiffs' counsel sent an email to defense counsel suggesting a number of stipulations. *None* of those stipulations were rejected out of hand. Instead, the next day defense counsel responded by indicating one of the proposed stipulations was "somewhat wordy," while asking for evidentiary support for the remaining proposed stipulations. Plaintiff's counsel has never responded to defense counsel August 24, 2018 email. *Ibid.*

> On September 4, 2018, defense counsel again emailed Plaintiffs' counsel indicating: "We continue to be willing to work with you to resolve any concerns you have relative to authenticity of documents and other issues discussed at the hearing." Instead of working with defense counsel to try to resolve any remaining issues, Plaintiffs' counsel simply indicated he would be filing the Motion at bar and blamed defense counsel for "fail[ing] to timely resolve discovery issues." Defendant counsel responded:

To place blame on our office for this alleged failure would be, at the very least, disingenuous. As I indicated at the hearing and in every communication we've had since that time, we continue to be willing to work with you to resolve any concerns you have relative to the issues you raised at the hearing in support of you arguments the discovery was necessary. In fact, I sent you the attached emails on this issue. We cannot "resolve" any issues without your cooperation and willingness to compromise.

*Ibid*.

No further communication has been received from Plaintiffs' counsel on the issue.

- "The Plaintiffs are currently making arrangements to schedule a second discovery hearing with the Magistrate as directed in the Administrative Order." DE 274 at p. 5.

    Two full weeks have passed since Plaintiffs' counsel made that representation in his Motion. As the transcript shows, Magistrate Goodman offered to coordinate a phone hearing upon the request of Plaintiffs' counsel. Neither defense counsel nor his legal assistant has heard from Plaintiffs' counsel or Magistrate Judge Goodman's office regarding Plaintiffs' counsel alleged attempt to set a second discovery hearing. The extended discovery window has now closed. The Court can draw its own conclusion.

- ***"The evasive discovery tactics and stonewalling by the Meloni Defendants is so clear that Magistrate Goodman stated that in all his years he has never seen a case where a party has not produced a single document in discovery in four (4) and a half years." Ibid.*** at p. 7. (emphasis in original)

    This statement is a shining example of a half-truth. Not surprising, Plaintiffs' counsel chose not to obtain and file the hearing transcript. Instead in a shameless attempt to unfairly prejudice Meloni and his counsel, counsel paraphrased--out of context--a statement by Magistrate Judge Goodman at the inception of the hearing making it appear as though the Magistrate determined Meloni and his counsel acted improperly. That did not happen as evidenced by the hearing transcript itself and the Administrative Order entered after the hearing.

    **<u>Plaintiffs' counsel does not even understand his own discovery requests.</u>**

To paint Meloni in a bad light, Plaintiffs' counsel includes in his Motion two Requests for

Admissions, and claims "the following 'circular' discovery responses can best exemplify the game

Defendants are playing:"

RFA 48. The Exhibit F of the Complaint contains a true and correct copy of the official and recorded Marbella's Docs and any amendment thereto.

**AMENDED RESPONSE: Admitted…**

RFA 49. The Exhibit F of the Complaint contains the same copy of the official and recorded Association's Docs that You and/or the Law Firms ***rely on while conducting day to day activities*** in the practice of law representing the interests of Marbella.

**AMENDED RESPONSE: Denied.**

*See*, DE 274 at p. 8 (emphasis added to RFA 49).

Despite the clarity of the RFAs, in making argument to support the "circular" accusation, Plaintiff's counsel paraphrases them as follows:

Plaintiffs first questioned if 'the Exhibit F of the Complaint contains a true and correct copy of the official and recorded Marbella's Docs...' Edoardo Meloni admitted that request but then denied that the said copy of the Marbella's Docs were the same ***he has in his office.***

*Ibid.* at p. 9 (emphasis added).

Plaintiffs' counsel misconstrues his own "RFA 49" as requesting Meloni to admit "the said copy of the Marbella's Docs were [sic] the same he has in his office." *Ibid.* The RFA does not say what the very person who drafted it says it says. Instead, it asks Meloni to admit he ***relies*** on Exhibit F "while conducting day to day activities in the practice of law representing the interests of Marbella." As Meloni made clear during his deposition, he does *not* rely on the "Marbella Docs" to determine what amounts Marbella seeks from its members through Meloni. Instead, he relies on Marbella or the property manager to determine what is due. Thus, there is nothing "circular" about the responses; in fact, the responses are wholly accurate and each answer the question that was asked, not the question counsel now claims was asked.

It is not realistic to expect Meloni or his counsel to be able to reach an agreement to resolve discovery disputes with Plaintiffs' counsel in light of the fact Plaintiffs' counsel does not even understand his own discovery requests. Yet, Meloni has tried to resolve the discovery issues and continues to hope Plaintiffs' counsel will re-engage in discussions.

### III.     Legal argument as to threshold for enlarging discovery deadline.

Plaintiffs had a full and fair opportunity to conduct whatever discovery they deemed necessary in 2014. At the close of that discovery period, Plaintiffs had not filed any motion to challenge any prior discovery response and Plaintiffs did not even indicate a need to extend the discovery deadline based on alleged discovery misconduct by Meloni. To the contrary, at that time, Plaintiffs affirmatively represented to the Court in January 2015 there was ***"no good reason … for deviating from the Court's Scheduling Orders.***" That statement is likely the most accurate one Plaintiffs had made in this entire case and it remains true today. The court can only extend the discovery deadline if it determines the existing deadline cannot "be met despite the diligence of the party seeking the extension." *Sosa v. Airprint, Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir.1998).

In this case, not only have Plaintiffs failed to prove any meaningful discovery remains outstanding, but Plaintiffs have also utterly failed to provide evidence they have been diligent in conducting discovery in this case. In fact, the evidence is to the contrary, and no amount of "rock-throwing" at counsel for Meloni can change that fact.

### IV.     CONCLUSION.

Plaintiffs have failed to satisfy the "good cause" requirement of Rule 16 in bringing the instant Motion. The record demonstrates a lack of diligence by Plaintiffs in conducting discovery in this case. Hence, Plaintiffs' Motion must be denied.

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
P: (813) 251-5500; F: (813) 251-3675
dgolden@gsgfirm.com
Counsel for MELONI Defendants